Decker *v.* Fisher.

---

SAME TERM. *Before the same Justices.*

DECKER and others *vs.* FISHER and others.

Oysters planted by an individual in a bed clearly designated and marked out in navigable waters, which are free for all the inhabitants of the state, are the property of the person planting them; and he may maintain trespass against another for removing them.

Decker *v.* Fisher.

If oysters have previously existed in their native state, on a particular ground, a person cannot deprive the public of the right to take them, by depositing others in the same place. But if none were there before, the privilege will be considered as having been created by such person, and as having never belonged to the public.

And other persons cannot impair the title of the first occupant, to the oysters, by depositing others in the same place, knowing that such occupant had, at the time, similar property there, and with an intent so to mingle the two kinds together, that neither could be identified.

MOTION by the defendants for a new trial. The action was trespass *de bonis asportatis*, for taking and carrying away the plaintiff's oysters from their grounds at Prince's Bay. The cause was tried at the Richmond circuit, in June, 1846, before Edmonds, circuit judge. The facts appearing in evidence, on the trial, are sufficiently stated in the opinion of the court. It appeared from the proofs, and was admitted on both sides, that the *locus in quo* was land covered by the public waters of this state far below low water mark at Prince's Bay, between Staten Island and New Jersey, and was a public highway. It also appeared that there was formerly a natural growth of oysters there, but that there had been none for several years. When the proofs were closed the defendant's counsel insisted that the action could not be sustained, for these reasons : 1. That the *locus in quo*, being a public highway, the right of fishing was free and could not be restrained by any exclusive appropriation by any individual ; but if any such right could be thus obtained, it had been acquired by the defendants by means of their prior appropriation and occupancy, and they could not be liable in trespass. 2. That at most the plaintiffs were tenants in common with the defendants in respect to the oysters taken, and that they could not maintain trespass against their co-tenants. 3. That the plaintiffs having intermingled their oysters with the defendants, without their consent, the whole had become the property of the defendants ; and the counsel requested the judge so to instruct the jury, if they should so find the fact. 4. That if the jury should find that the defendants had converted any of the plaintiff's oysters by a sale, the action should have been assumpsit for money had and received, or in

trover for the conversion. The judge refused so to charge, but charged substantially as follows: That the *locus in quo* being public, and every man having a right to fish there, trespass could not be maintained for merely removing the oysters; otherwise every man who should be industrious enough to plant the whole bay might appropriate the whole bay to his own use; every man having a right to remove obstructions to his own enjoyment of that right, and for that removal trespass would not lie. But if he did more than merely take away, if he appropriated to his own use, that which he thus removed, trespass would lie; and therefore the question for the jury simply was whether the defendants had appropriated to their own use the plaintiffs' oysters which they had thus removed from the bay. To which defendants' counsel excepted, and the jury found for the plaintiffs $108 damages.

*R. N. Morrison,* for the defendants.

*Lott C. Clark,* for the plaintiffs.

*By the Court,* STRONG, P. J.  The plaintiffs, who were partners, had for several years previous to 1844, planted oysters in a part of Prince's Bay, which they had designated by stakes, and had subsequently dredged them for market, so far as appears, without obstruction from others, until they were interrupted by the defendants Elias and James Fisher. It appears that in February, 1844, the oysters which had been previously planted by the plaintiffs, had been principally removed. It is stated by one of the defendants' witnesses, that they deposited oysters on the ground previously occupied by the plaintiffs, some time during that month. That fact is rendered somewhat doubtful, however, by the statement of another of their witnesses, who testified, that when the defendants threw out oysters on the ground, in May, 1844, one of them observed that *some body* had thrown out oysters on his ground. The remark would not have been made, if he had done that himself. It was proved that the plaintiffs had filled the ground with oys-

Decker *v.* Fisher.

ters, in April, 1844, and that two of the defendants threw one load on the same ground, in May, 1844, and then said, that the ground was filled, and they would throw some on it and have their share. In the summer of 1844, the defendants Elias and James, against whom the verdict was rendered, took five or six skiff loads, containing twenty bushels each, of oysters from the ground in question, and carried them away. From all the testimony, I think it clear, that these were the oysters which had been deposited there by the plaintiffs in April, with the exception perhaps of a small quantity which had been intentionally mingled with them by the defendants. There is a contrariety of evidence as to some of these facts, but the jury were, I think, warranted in drawing the inferences which I have stated. The question is, whether, upon these facts, the plaintiffs can maintain this suit. It was decided in *Fleet* v. *Hegeman*, (14 *Wend.* 42,) that oysters planted by an individual in a bed clearly designated and marked out in a bay or arm of the sea, which is a common fishery to all the inhabitants of the town in which the bay is situated, are the property of him who planted them, and for any interference with them, trespass lies. The reasons upon which that case was decided, are equally applicable to navigable waters which are free for all the inhabitants of the state. It is not against the common privilege to say that while any one may fully exercise it, that does not give him the right to take property which another has reclaimed from its native wild state, and confined within his immediate power, so as to prevent its escape. If oysters had previously existed in their native state on this ground, the plaintiffs could not have deprived others of the right to take them by depositing others in the same place. But if there had been none there before, the privilege had been created by the plaintiffs, and had never belonged to the public. The defendants, could not impair the plaintiffs' title to the oysters by depositing a few others in the same place, knowing that the plaintiffs had at the time similar property there, and with an intent so to mingle the two together that neither could be identified, and

thus enable them to appropriate the property of others to their own use. (2 *Kent's Com.* 365, *and the cases there cited.*)

The learned judge charged the jury, that trespass would not lie against the defendants, for taking the oysters in the public waters, but that the action could be maintained, if they subsequently appropriated them to their own use. If there was any error in the charge, it was in favor of the defendants, and for that they cannot obtain a new trial.

New trial denied.

