Brinckerhoff *v.* Starkins.

---

## BRINCKERHOFF *vs.* STARKINS.

It is a general rule that no person can acquire an exclusive right in navigable waters, except by grant from the sovereign power, or by prescription, which supposes a grant, the evidence of which has been lost.

A person who plants oysters in navigable waters, opposite to the land of another person, does not thereby acquire such a possession of them as will enable him to maintain trespass against the owner of the adjacent land for taking them away.

Brinckerhoff v. Starkins.

It is not doubted that oysters are animals feræ naturæ; nor that the sea, or navigable bays and rivers, are their natural element.

The only right which a person can acquire to animals feræ naturæ, ·is a qualified property in them ; that is, they are his property while they continue in his keeping, or actual possession. But if they escape, or if he permits them to go at large, his property instantly ceases, unless they have animum revertendi, which, it is said, is only to be known by their custom of returning. If the intention to return exists, in contemplation of law, the possession continues. But in the case of oysters no power of locomotion exists; they can not, of their own act, either escape or return. It follows then, that a man can have property in them, only when he has an actual possession.

It can not be contended that a party who has once acquired the possession and ownership of oysters, can restore them to their natural condition in navigable waters, and without asserting any other right of ownership, or establishing any other evidence of actual possession, can recover in trespass, against any person who shall, at any future time, carry them away. He should, at least, have the power of present actual possession, accompanied by a continued assertion of ownership, and by such evidence of the right of possession as will necessarily exclude the right of any other person.

THIS was an action of trespass brought by Starkins, the defendant in error, against Brinckerhoff, the plaintiff in error, in a justice's court, for taking a quantity of oysters from Le Roy Bay, Long Island Sound. The cause was tried on the 29th of May, 1847, before the justice and a jury ; a verdict found of *no cause of action ;* and a judgment rendered thereon against the plaintiff in the action, and a *certiorari* brought thereon to the Westchester county court, by whom the justice's judgment was reversed. Upon this judgment of reversal a writ of error was brought to the supreme court. The facts of the case are sufficiently stated in the opinion of this court.

*J. Howe,* for the plaintiff in error.

*R. M. Tysen,* for the defendant in error.

*By the Court,* EDWARDS, J. The return to the *certiorari* which was issued in this cause, shows that a witness, called on the part of the plaintiff below, testified that about four or five years previous to the trial, the plaintiff planted oysters in the mouth of Le Roy Bay, adjoining Long Island Sound; but the

quantity was not stated.   The witness also testified that he was an oysterman, and had known the bay for twenty years, and that there was no natural growth of oysters there to his knowledge. The trespass for which the suit was brought, was alledged to have been committed on or about the 10th day of March, 1847; and the trial took place on the 29th day of May in the same year.   It was further testified, on the part of the plaintiff, that he placed buoys over the oysters the first year that they were planted, which were carried away; and that afterwards, other buoys were placed there, which were also carried away.   The witness further stated, that he was near the oyster bed in 1843, and in 1844, and that he did not then see any buoys there, and had not seen any since they were put there the second time, till about the time of the trial of a previous suit, which seems to have taken place shortly before the trial of this suit.   It also appeared that the oysters were planted opposite to the defendant's land; and that his servant, by his orders, carried away about fifteen bushels of them.

Upon this state of facts, a verdict and judgment were rendered for the defendant below.   A writ of *certiorari* was then issued from the court of common pleas of Westchester county, and the judgment rendered by the justice was reversed.   The case now comes before us upon a writ of error.

The questions which were raised by the parties, on the trial, do not very clearly appear from the error book.   It was contended upon the argument, that the error which justified the reversal of the judgment of the justice before whom the cause was tried, was to be found in his charge to the jury.   But even that does not, distinctly, present the questions which were discussed before us.   The only legal proposition contained in the justice's charge is, that no person can acquire an exclusive right to the tide waters of Long Island Sound, by staking or buoying a piece of ground, under those waters, for planting oysters therein, without legislative enactment.   This is, in substance, nothing more than the general rule which is to be found in the books, and which certainly of late years has not been doubted, that no person can acquire an exclusive right, in navigable wa-

ters, except by grant from the sovereign power, or by prescription, which supposes a grant, the evidence of which has been lost. (*Carter* v. *Murcot*, 4 *Burr.* 2164. *Gould* v. *James*, 6 *Cowen*, 369. *Rogers* v. *Jones*, 1 *Wend.* 237. 3 *Kent's Com.* 418.) I shall assume, however, for the purpose of testing the validity of the claim set up by the defendant in error, that the justice charged, that upon the state of facts proved, the plaintiff was not entitled to a verdict. The jury, undoubtedly, considered this to be the effect of his charge, and I think that we are justified in so regarding it; particularly as it was thus treated by the counsel on both sides, upon the argument.

The amount in controversy in this suit is insignificant, but the principles involved in it are of the highest importance.

The defendant in error contends, that the proof offered by him established such a possession of the property taken as to entitle him to recover its value in an action of trespass. It is not doubted that oysters are animals *feræ naturæ;* nor that the sea, or navigable bays and rivers, are their natural element. It is contended, however, that in this case the oysters were reclaimed, and that the plaintiff below had acquired a qualified property in them, which had not been abandoned, or lost, by planting them in the manner and at the place stated. In the case of *Fleet* v. *Hegeman*, (14 *Wend.* 42,) which was particularly relied upon by the defendant in error, it appeared that the plaintiff had gathered a quantity of oysters when small, about two years before the trial, and had planted them in a bed in Oyster Bay, about fifteen rods from the adjoining shore, of which he was the proprietor; and that he enclosed them with stakes; that no oysters grew there at the time, and that none had grown since, outside of the bed. Upon this state of facts, the supreme court reversed the judgment of the court of common pleas, which had been given in favor of the defendant. The ground of this decision was that the oysters had been reclaimed.

The only right which a person can acquire to animals *feræ naturæ*, is a qualified property in them; that is, they are his property while they continue in his keeping, or actual possession. But if they escape, or if he permits them to go at large, his

property instantly ceases, unless they have *animum revertendi,* which, it is said, is only to be known by their custom of returning. (2 *Bl. Com.* 392.) If the intention to return exists, in contemplation of law, the possession continues. In the case, however, of the animals in question, no power of locomotion exists. They can not, of their own act, either escape or return. It follows, then, that a man can have property in them only when he has an actual possession. The question then arises, whether there was such a possession in this case. It certainly will not be contended, that a party who has once acquired the possession and ownership of oysters, can restore them to their natural condition in navigable waters, and without asserting any other right of ownership, or establishing any other evidence of actual possession, can recover in trespass, against any person who shall, at any future time, carry them away. He should, at least, have the power of present actual possession, accompanied by a continued assertion of ownership, and by such evidence of the right of possession, as necessarily excludes the right of any other person. It seems to me, that it is upon this principle alone that the case above cited can be sustained. And even this is an extension of the rule laid down by the elementary writers. But, adopting the case of *Fleet* v. *Hegeman* as an authority binding upon us, which we think we are bound to do, still we do not think that the claim of the defendant in error can be sustained. What were the facts upon which that case was decided? In the first place, it was shown that the oysters had been planted but about two years before the trial; next the bed was distinctly defined, and enclosed by stakes; and lastly, the bed was opposite the plaintiff's land, and must be supposed to have been within his view, and capable of being watched and protected by him. In the case before us, on the contrary, there was no evidence as to the quantity of oysters which had been planted by the defendant in error; they had been planted about five years before the alledged trespass was committed; there had been no stakes, or enclosure, defining the extent of the bed. It is true, that buoys had been placed there at two different times, but they had been carried away, and from the year 1843 to a period

Brinckerhoff *v.* Starkins.

shortly before the trial, in 1847, there had been neither buoys nor any other evidence of an assertion of ownership; and, in addition to all this, the oysters were in front of the land of the plaintiff in error. If, upon this state of facts, the plaintiff below was entitled to a verdict, I can not see why a person, who places oysters in any of the navigable waters of this state, does not acquire the exclusive property in them, and in all oysters which shall be found in the same place, provided he can show that there were none there before, and that he has, at some time, held out some evidence of an assertion of ownership, either to assist in guiding him to the place, or to warn others not to interfere with it. The important evidence of property arising from an enclosure by stakes, or otherwise, was wanting in this case. If such was the character of the bay, that it did not admit of such an enclosure, the conclusion must be, not that, for that reason, such evidence of ownership was unnecessary, but that it is a place where the right of property, asserted in this case, can not be established. It seems to me, that the ownership of the adjoining premises is also an important piece of evidence to establish the claim which is set up in this case; not upon the ground that an adjoining proprietor has any rights in navigable waters beyond those of the public, for it is well settled that he has not, (*ubi sup.*) but as an item of evidence tending to establish a qualified property, it is most important. In such a case, he has the property under his watch and guard, and he constantly has the power of immediate, present, actual possession. The conclusion then, to which we have arrived, is, that the plaintiff failed to make out such a case at the trial as entitled him to a verdict.

Although we consider the case of *Fleet* v. *Hegeman* as an authority which we are bound to follow, still, it seems to us, that the court overlooked the idea, that the principle established by them, if carried out, will, in effect, authorize an exclusive appropriation of public navigable waters for fishing purposes; for there is no limit fixed to the extent to which an individual can make his oyster beds, and so long as he has oysters there no other person can lawfully plant his in the same bed; so that the result might be the exclusive appropriation, by a few indi-

viduals, of all the navigable waters capable of being thus appropriated. In the case of *Arnold* v. *Mundy*, (1 *Halst.* 1,) which arose in a neighboring state, the court felt the full force of this difficulty, and they held an individual could not acquire an exclusive right to an oyster bed, even by a grant from the state; and that the only way in which he could acquire even a temporary enjoyment must be by a lease from the sovereign power, for a reasonable toll or rent; and that too as an exercise of the *jus regium*, for the common benefit of every individual citizen.

We are of opinion that the judgment of the court of common pleas should be reversed.

[NEW-YORK GENERAL TERM, June 14, 1851. *Edmonds, Edwards* and *King*, Justices.