## The State *vs.* Thomas Taylor.

1. It is not necessary to aver, in an indictment for stealing oysters, that they were reclaimed, or had been placed in the possession of the owner.

2. The owner has the same absolute property in oysters that he has in inanimate things or domestic animals, and the rule that applies to animals *feræ naturæ* does not apply to them.

3. An indictment will lie for stealing oysters planted in the public or navigable waters of this state, if they are planted in a place where oysters do not grow naturally, and the spot is so designated by stakes or otherwise, that the oysters can be readily distinguished from others in the same waters.

4. Oysters planted in public waters will not be considered as abandoned to the public, unless planted in a place where oysters grow naturally.

5. Planting oysters in public waters is not such a special appropriation of those waters as justifies the removal of the oysters as a nuisance, unless they interfere with the rights of the public, such as the rights of navigation and fishing; and even if they do so interfere with public rights, a private person has no right to take them away, and convert them to his own use.

This cause came before the court on a case certified from the Cape May Oyer and Terminer. The facts appear in the following state of the case:

The indictment charged the defendant, in the usual form, with stealing eighteen bushels of oysters, of the value of eighteen dollars, of the goods and chattels of one George Hildreth.

Upon the trial, evidence was produced, on the part of the state, that Hildreth laid out (or planted) the oysters in one of the sounds in the Lower township of Cape May, below high water mark, where they were covered with water, except at low tide; that they were brought partly from Great Egg harbor, and partly from Chesapeake bay, and placed there in the falls of 1853 and 1854, and spring of 1855, and were taken away by defendant in spring of 1857; that these oysters could easily be distinguished from other oysters that grew in the sound; that they were placed in a part of the sound where no oysters grew naturally; and that stakes were placed to designate the

situation, and that defendant acknowledged they were Hild-reth's oysters.

On behalf of defendant, evidence was produced that, six years ago, witness had got oysters from that part of the sound staked off by Hildreth, which grew there naturally.

The court charged the jury as follows: " If you are satisfied that the same oysters which Mr. Hildreth planted were unlawfully taken by defendant, with the *intent to steal them,* and if you are also satisfied that they were planted in a place where oysters did not naturally grow, and the place was so marked and identified that these oysters could be readily found and identified, and so that the defendant and others going into the sound for clams and oysters naturally growing therein, could readily know that these oysters were planted there, and held as private property, and were not natural oysters, or in or upon a natural oyster-bed, the court is of opinion the oysters were the subjects of larceny, and the defendant may be found guilty. If you think the oysters were planted in or upon a natural oyster-bed, they should be considered as abandoned to the public, and not the property of Hildreth; or if you think the planted oysters were not marked and identified, as before stated, the defendant should be acquitted."

The defendant having been found guilty, the Court of Oyer and Terminer granted a rule to show cause why the judgment should not be arrested, and why a new trial should not be ordered.

The case is now certified to the Supreme Court for an advisory opinion on the following questions:

*First.* Is the indictment sufficient?

*Second.* Did the court state the law correctly in the charge given?

Argued at February Term, 1858, before the CHIEF JUSTICE, and Justices POTTS, ELMER, and HAINES.

*Keasbey*, for defendant.

*Woodhull*, for state.

The opinion of the court was delivered by

The CHIEF JUSTICE. The indictment charges the defendant with stealing " 18 bushels of oysters, of the value of $18, of the goods and chattels of one George Hildreth." It is objected that oysters being animals *feræ naturæ*, there can be no property in them, unless they be dead or reclaimed, or tamed, or in the actual power or possession of the claimant; and that the want of such averment is a fatal defect in the indictment. 2 *Bla. Com.* 390, 392; *Arch. C. P.* 116; 3 *Chitty's Cr. L.* 947 ; *Wharton's C. L.*, §§ 1754–5.

The principle, as applied to animals *feræ naturæ*, is not questioned. But oysters, though usually included in that description of animals, do not come within the reason or operation of the rule. The owner has the same absolute property in them that he has in inanimate things or in domestic animals. Like domestic animals, they continue perpetually in his occupation, and will not stray from his house or person. Unlike animals *feræ naturæ*, they do not require to be reclaimed and made tame by art, industry, or education ; nor to be confined, in order to be within the immediate power of the owner. If at liberty, they have neither the inclination nor the power to escape. For the purposes of the present inquiry, they are obviously more nearly assimilated to tame animals than to wild ones, and, perhaps, more nearly to inanimate objects than to animals of either description. The indictment could not aver that the oysters were dead, for they would then be of no value ; nor that they were reclaimed or tamed, for in this sense they were never wild, and were not capable of domestication ; nor that they were confined, for that would be absurd. The only averment that could be made is, that they had been gathered, or were in the actual possession of the prosecutor, which certainly is not necessary in order

to sustain the indictment. Under our laws there may be property in oysters growing naturally upon the land of another person, and which the owner may have acquired by purchase. In regard to these, it would not be averred that they had ever been gathered or been under the control of the owner or in his possession, actual or constructive, further than inanimate objects are in the possession of the owner, upon the principle that property in personal chattels draws after it the possession. The indictment is not defective.

The more material question in the cause is whether, upon the case stated, the oysters in question were the subject of larceny. Was the law upon this point correctly stated in the charge to the jury? The jury were instructed that if the same oysters which were planted by Hildreth were unlawfully taken by the defendant, with the intent to steal them; if the oysters so planted could be easily distinguished from other oysters that grew in the sound; if they were planted in a place where oysters did not naturally grow; if the place where they were planted was marked and identified, so that the defendant and others going into the sound for clams and oysters naturally growing there could readily know that these oysters were planted and held as private property, and were not natural oysters, or in or upon a natural oyster bed, then the oysters were the subject of larceny, and the defendant might be convicted. But if the jury believed that the oysters were planted in or upon a natural bed, they should be considered as abandoned to the public, and not the property of Hildreth; or, if the jury believed that the planted oysters were not marked and identified, as before stated, the defendant should be acquitted.

There is clearly nothing in the charge that conflicts with the well-settled law of the state, as decided in *Arnold* v. *Mundy*, 1 *Halst.* 1, viz., that arms of the sea, including both the waters and the land under the waters, for the purposes of navigation, fishing, and all other uses

of the water and its products, are common to all the people of the state. Nor is there anything in the charge in conflict with the principles which appear to have been adopted by the court in the earlier case of *Shepard and Layton* v. *Leverson, Penn.* 391. The facts in evidence clearly distinguish the present case from that of Shepard and Layton *v.* Leverson. In that case it was not shown that the oysters taken by the defendant were the identical oysters planted by the plaintiff; nor was there any mode by which the oysters of the plaintiff could be identified. Neither of those difficulties exists in the present case.

The oysters in question had once been the property of Hildreth. The only question is, whether the planting of these oysters in a public sound, where all the inhabitants have a common right of fishery, was necessarily an *abandonment*, or a return of the property to the common stock. There was clearly no intention on the part of the owner to abandon his property ; on the contrary, they were gathered and planted expressly for the benefit of the owner. If an abandonment is to be presumed, it will be a legal intendment directly against the truth of the case. The casting of property into the sea, with the intention of reclaiming it, is not an abandonment. " He," says Domat, " who finds a thing that is abandoned, that is, of which he who was master of it, *quits and relinquishes the possession and property, not being willing to keep it any longer,* becomes master of it." *Domat's Civ. L., part* 1, *b.* 3, *title* 7, §§ 2, 9, (*Am. ed.* 1850, § 2154); 2 *Bla. Com.* 9, 402.

It was held by the Chief Justice, in the case of Shepard and Layton *v.* Leverson, that the mere act of throwing the oysters into a public river, where all the inhabitants have a common right of fishery, was of itself an abandonment in law, on the ground that, where the subject is put without the power of the owner, where it is thrown into the common stock, from which it cannot be distinguished, there can be no question of intent. It was held analogous to the case of a deer taken in a forest, and

turned loose again.    But it was admitted that where the
act relied on as an abandonment is in itself equivocal, and
where the identical property may be known and resumed
at pleasure, then the intention may be made a question.
Now this case finds that the oysters in question could
readily be identified ; that no oysters grew naturally
where they were planted, and that the spot where they
were planted was designated.    The subject of the property,
having itself no power of locomotion, and being planted
where no other oysters naturally grew, it was not (as in the
case of the deer in a forest) put without the power of the
owner, nor thrown into the common stock, from which it
could not be distinguished.

In *Fleet* v. *Hegeman*, 14 *Wend*. 42, it was held by the
Supreme Court of New York that oysters planted by an indi-
vidual in a bed clearly designated in a bay or arm of the
sea, which is a common fishery, are the property of him who
planted them, and that, for taking them away by another,
trespass lies.    This case was approved in *Decker* v. *Fisher*, 4
*Barb.* 592, and its authority recognized in the more recent
case of *Brinckerhoff* v. *Starkins*, 11 *Barb.* 248 ; *Angell on
Tide Waters* 139.    These authorities clearly sustain the in-
struction given to the jury in the present case.

It was earnestly urged, as an objection to sustaining
the conviction in the present case, that the principle
recognized by the court will, in effect, authorize the exclu-
sive appropriation of public navigable waters to private
purposes, and that it will virtually confer upon every
individual who stakes off and plants an oyster bed a right
of several fishery in the land thus appropriated, to the
exclusion of the public.    This difficulty manifestly embar-
rassed the court in the case of Shepard *v.* Leverson, and
was adverted to in Brinckerhoff *v.* Starkins.    But does any
such consequence necessarily result from the instruction
given to the jury ?    They were expressly told that, if these
oysters were planted where oysters naturally grew, or if
they could not be readily distinguished from the natural

product of the waters by persons engaged in fishing, the defendant could not be convicted. If, then, the oysters interfered in any way with the defendant's right of fishing, or with the right of navigation, or any other right of the public in the waters, it is not claimed that the defendant had not a right to remove or destroy them. Clearly the legislature may, at their pleasure, prohibit the planting of oysters by individuals in navigable waters, or cause them to be removed when planted, whenever they become injurious to the public interests or are regarded as an encroachment upon the public rights. But admitting, as may be done, that the planting of the oysters in the public waters was a clear case of nuisance and encroachment upon the public right, it could give the defendant no right to steal them or appropriate them to his own use. The deposit of wood in the public highway is an encroachment on the right of way, and may and does necessarily prevent any other individual from availing himself of the same privilege upon the same spot. The wood may be removed as a nuisance, but a third party would not be justified in stealing it because it was a nuisance. It is not pretended, in the present case, that the defendant's right of fishing was in the least impaired, or that the oysters were taken in the fair exercise of his lawful right. The case presented is that of a willful and wanton appropriation of his neighbor's property, with intent to steal. The law was correctly stated by the court to the jury, the conviction is right, and the Court of Oyer and Terminer should be advised accordingly.