WARREN P. KEENE *vs.* WILLIAM F. GIFFORD.

Barnstable.   December 5, 1892. — January 11, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Trespass — License to plant Oysters — Statute.*

A license was issued to A., under the Pub. Sts. c. 91, §§ 97, 98, 99, and later statutes, to plant, etc. oysters on the flats in the tide waters of a bay. B. just previously had applied for a renewal of his license of the same flats, and, having failed to take it out, after being notified that it was to be granted, the license was issued to A., who thereafter brought an action of tort under the Pub. Sts. c. 91, § 99, against B. for entering the flats and carrying away oysters. *Held*, that the statutes contemplate a written and recorded license, and whatever right the defendant might have had if he had called for his second license upon receiving notice that it had been awarded to him, his failure to call for it left it open for the selectmen to grant a license to the plaintiff, and the license so granted was valid, and the fact that oysters planted by the defendant remained upon the territory gave the defendant no right to gather them after the plaintiff obtained his license.

TORT, for trespass.  The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on agreed facts, which are stated in the opinion.

*C. F. Chamberlayne*, for the defendant.

*H. P. Harriman*, for the plaintiff.

BARKER, J.  The agreed facts show that the defendant took oysters from flats in the tide waters of Bourne, in Buzzard's Bay, at a time when those flats were under license to the plaintiff.  The license was issued on April 26, 1890, and the oysters were taken in the following October; but the defendant had had a license of the same flats, which had expired by its own limitation in June, 1889, when there were on the flats about five hundred bushels of oysters which he had placed there.  He applied for a renewal of his license, but, although notified by the selectmen that they had concluded to grant it, he did not take it out; and the license to the plaintiff was upon an application made several months subsequently.  The contention of the defendant is, that the oysters which he took were his own property, which he had a right to take, and that the plaintiff's lease, if not void, certainly could not impair the defendant's private right to recover his own oysters from the sea.

The oyster has no power of locomotion, and after the spat has once acquired a shell remains in its original bed unless forcibly removed.  It thrives only if constantly covered by the tide, and cannot, therefore, be taken except by disturbing to a greater or less extent ground the ownership of which is in the Commonwealth or the town, and not in private persons.  The oyster fishery has been regulated by statute from early times. By the Prov. St. of 1764–65, 4 Prov. Laws, (State ed.) 743, all persons were forbidden to take oysters in any of the bays, ports, or rivers of the Province without leave of the selectmen, except that an inhabitant might take oysters for his own eating, or for market in his own town.  This statute seems to have been continued in force until the adoption of the St. of 1795, c. 71, the provisions of which are yet substantially in force. See Rev. Sts. c. 55, §§ 11–17; Gen. Sts. c. 83, §§ 12, 13, 15; Pub. Sts. c. 91, §§ 93, 94, 95, and 96.  The St. of 1795, c. 71, was discussed in *Dill* v. *Wareham*, 7 Met. 438, 446, and in *Commonwealth* v. *Manimon*, 136 Mass. 456.  An examination of the statutes shows that the fishery has not been an open one in our

waters since 1765, and that no provision was made until 1848 by which, if an individual artificially created oyster beds on public flats, he could be protected in their enjoyment, and allowed to take oysters from them at pleasure.

The original provisions for licensing of flats to individuals were contained in an act concerning the planting of oysters (St. 1848, c. 152), the provisions of which were continued in the Gen. Sts. c. 83, §§ 16, 17, 18, and in the Pub. Sts. c. 91, §§ 97, 98, 99. Other provisions have been from time to time added. See St. 1878, c. 179; Pub. Sts. c. 91, §§ 100, 101; St. 1884, c. 284; St. 1885, c. 220; St. 1886, c. 299. The plaintiff's license was regularly issued under these provisions. They contemplate a written and recorded license, and whatever right the defendant might have had if he had called for his second license upon receiving notice that it had been awarded to him, his failure to call for it left it open for the selectmen to grant a license to the plaintiff, and the license so granted was valid.

It remains to consider whether the fact that oysters planted by the defendant remained upon the territory gave the defendant any right to gather them after the plaintiff obtained his license. The facts that the place licensed is not to contain a natural oyster bed, and the low price charged in fees, make it apparent that the purpose of the statute is to encourage the artificial propagation of oysters. Young oysters or spat brought by the currents into contact with any solid material upon the sea bottom adhere, acquire shells, and grow. In this way new beds are made. If oysters which have shells are removed from one locality to another, they increase in size and improve in quality. It was expected that licensees would in one or both of these ways make artificial oyster beds on the flats licensed to them. The exclusive occupation of the territory for a considerable time was originally essential to the profit of the undertaking, and is secured by making the license for so long a term as twenty (now ten) years, and by giving during the term the exclusive use of the territory. It does not appear for what term the defendant's license had been granted, but if for less than the maximum, it was at least for a term satisfactory to himself, and of which he knew the limit. During that term he had for his private use a part of the public domain, without any payment in the nature of rent, and certainly with-

out any implied or expressed promise of further exclusive rights after the expiration of his term. In planting oysters upon the territory, he was not making use of a common on which he had a right to depasture them, reclaiming them at his will, but was placing upon lands of which in effect he had a lease articles which would, as it were, become part of the land itself, and which could not lawfully be removed by him except during the term of his occupancy, and in accordance with its conditions. There is no indication in the statute of an intention to forbid the relicensing to another of territory which has been so improved. It is naturally to be expected that the presence of oysters for a number of years in any locality will tend to make in the vicinity extensive and valuable beds. Upon the expiration of a license, if the territory contains no natural oyster beds it is for the selectmen to say whether the territory shall be open to all lawful fishing, or shall be again placed in the control of the former licensee or of some other person. Oysters planted under this system, if not a part of the realty itself, can be removed only in pursuance of the provisions of the statutes regulating the fishery. So long as the one who deposited them has a license, he may take them in accordance with the conditions of his license. By accepting his license he consents that his rights shall be limited by its terms, and when it ceases all his rights in the oysters are at an end. After that time he is under the statutory prohibition. For this reason the term is made sufficiently long, so that he may have full opportunity to reap the benefit of his labor. Thus no private rights of the defendant were impaired by the granting of the license to the plaintiff, and after that license had been granted the defendant could not take oysters from the flat, without the plaintiff's consent, without making himself liable in an action of tort under Pub. Sts. c. 91, § 99. The cases from New York and New Jersey cited by the defendant are all clearly distinguished from the case at bar, by the provisions of our statutes above cited. See *Fleet* v. *Hegeman*, 14 Wend. 42; *McCarty* v. *Holman*, 22 Hun, 53; *Sutter* v. *Van Derveer*, 47 Hun, 366; *People* v. *Hazen*, 121 N. Y. 313; *State* v. *Taylor*, 3 Dutch. 117; *Britton* v. *Hill*, 12 C. E. Green, 389; *Grace* v. *Willets*, 21 Vroom, 414.

*Judgment affirmed.*