CHARLES H. VROOM, Respondent, v. JOHN TILLY et al., Appellants.

1. OYSTERS — ACT RELATING TO CULTIVATION OF SHELL-FISH (L. 1887, CH. 584) — CONDITIONS OF GRANT PRECEDENT, NOT SUBSEQUENT.   The grantee of a perpetual franchise in oyster grounds pursuant to chapter 584 of the Laws of 1887 acquires the exclusive right to the oysters planted thereon only when he performs and continues to perform the statutory conditions of the grant: 1. He must mark out the land proposed to be used and must continue to keep it so marked.   2. He must actually plant or cultivate oysters thereon.   These conditions are not subsequent so as to require affirmative action by the state to enforce a forfeiture in case of non-performance, but are precedent, and in such a case the franchise reverts and the rights of the grantee cease.

2. TITLE TO OYSTERS PLANTED ON LAND UNDER WATER GRANTED FOR THAT PURPOSE TO ANOTHER PARTY.   One who in good faith plants oysters on land under water, without knowledge that it has been granted to another for the purpose of cultivating shell-fish thereon, and protects them by the marks recognized by the common law, acquires an exclusive title to the oysters and may maintain an action for their conversion, where the grantee, although designating the boundaries of the grant by buoys at the time it was made, as required by the statute, fails thereafter to maintain them or to cultivate oysters thereon.

*Vroom* v. *Tilly*, 99 App. Div. 516, affirmed.

(Argued February 6, 1906; decided March 6, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 28, 1904, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin Countryman* and *Henry J. McCormick* for appellants.   The common-law rule relating to the rights of an individual planting and cultivating oysters in the tide waters of a bay or arm of the sea where grants of franchises have been made to particular individuals for the exclusive use of certain lands under water, is no longer in force.   (*Post* v. *Kreischer*, 103 N. Y. 110; *People* v. *Hazen*, 121 N. Y.

314; *Spencer* v. *Myers*, 150 N. Y. 269; *Matter of N. Y. & H. R. Co.* v. *Kip*, 46 N. Y. 546; *Mead* v. *Stratton*, 87 N. Y. 493; *Baum* v. *Mullen*, 47 N. Y. 577; *Brooks* v. *Schwerin*, 54 N. Y. 344; *Nicoll* v. *N. Y. & E. R. Co.*, 12 N. Y. 121; *Towle* v. *Remsen*, 70 N. Y. 303; *Uppington* v. *Corrigan*, 151 N. Y. 144; *Vail* v. *L. I. R. R. Co.*, 108 N. Y. 283.) If the oysters grown upon the forty acres of land in question of the Nicholas P. Housman tract be regarded as ordinary personal property, the title to the oysters was in the defendants, and they had a right to appropriate them to their own use. (*State* v. *Taylor*, 27 N. J. L. 117; *Fleet* v. *Hegeman*, 14 Wend. 42; *Stahl* v. *Wilbur*, 77 N. Y. 158; *Sherman* v. *Willett*, 42 N. Y. 146; *Sexton* v. *Bruse*, 135 N. Y. 387; *Le Barran* v. *Babcock*, 122 N. Y. 153; *De Mott* v. *Hageman*, 8 Cow. 220; *Lane* v. *King*, 8 Wend. 584; *Shepard* v. *Filbrick*, 2 Den. 174; *Rich* v. *Baker*, 3 Den. 79.) If the oysters in question grown upon the Nicholas P. Housman tract be regarded as *feræ naturæ*, the title to them as personal property was in the defendants, and they had a right to appropriate them to their own use. (*Blades* v. *Higgs*, 11 H. L. Cas. 621; *Gillett* v. *Mason*, 7 Johns. 16; *Ferguson* v. *Miller*, 1 Cow. 243; *Goff* v. *Kilts*, 15 Wend. 550; *Merrills* v. *Goodwin*, 1 Root, 209; *Rexworth* v. *Coon*, 15 R. I. 35; *Sterling* v. *Jackson*, 69 Mich. 489; *Decker* v. *Fisher*, 4 Barb. 592; *Brinkerhoff* v. *Starkins*, 11 Barb. 248; *Lowndes* v. *Dickerson*, 34 Barb. 586.) The fact that the plaintiff and his assignors believed that the tract buoyed out by them included the lands in question, and that they first learned that said lands were in the Nicholas P. Housman tract and not in the Merrill tract in June, 1902, did not change the legal effect of their acts nor relieve them from the wrongful character imposed upon their acts by law. (*Parker* v. *Euston*, 102 Ill. 272; *People* v. *Martell*, 138 N. Y. 595; *Spaulding* v. *Lowe*, 56 Mich. 367; *I. S. M. Co.* v. *Reynolds*, 124 U. S. 374; *Curtis* v. *Albee*, 167 N. Y. 360; *I. R. M. Co.* v. *Hurtin*, 37 Mich. 332; *Gates* v. *R. B. Co.*, 70 Mich. 309; *Dyke* v. *Nat. Transit Co.*, 22 App. Div.

360; *Pierpont* v. *S. & M. L. Co.*, 11 App. Div. 383; *Hoffman* v. *Carow*, 22 Wend. 285.)

*S. Le Roy Ackerly* for respondent. The law, applied to the facts found by the trial court, justifies a recovery by the plaintiff. (*Davis* v. *Davis*, 72 App. Div. 593.) Under the facts of this case the rights of the parties should be determined by the common law regulating private ownership in shell-fish. (*McCarthy* v. *Holman*, 22 Hun, 53; *Grace* v. *Willetts*, 50 N. J. L. 414.) Defendants had no right to confiscate or appropriate the oysters in dispute. (*Sutter* v. *Vanderveer*, 47 Hun, 366; *McCarthy* v. *Holman*, 22 Hun, 53; *Grace* v. *Willetts*, 50 N. J. L. 414.)

HAIGHT, J. It appears from the findings of the trial court that in the month of December, 1891, the state of New York, through its commissioner of fisheries, granted to one Nicholas P. Housman a franchise in a tract of land under the waters of Long Island Sound near Crane's Neck in the county of Suffolk, consisting of two hundred and forty acres, pursuant to the provisions of chapter 584 of the Laws of 1887, for the purpose of the cultivation of shell-fish; that the plaintiff was engaged in the cultivation of oysters upon an adjoining tract in which a similar franchise had been granted to one John H. Post, and had acquired the right to cultivate oysters upon another tract also adjoining, in which a grant had been made to one Elizabeth V. Merrill; that in the summer of 1896 the plaintiff in good faith believing that he was upon lands included in the franchise to Merrill, proceeded to buoy, dredge out, plant and cultivate oysters on a tract of land consisting of about forty acres, and from that time on maintained the buoys surrounding such lot, caught the sea stars therefrom and cared for the growing oysters; that the soil upon which such cultivation was had proved available for the purpose, resulting in a large production; that about the first of June, 1902, the defendants, who had acquired the rights of Nicholas P. Housman in his franchise, caused a survey to be made, which

showed that the forty-acre tract upon which the plaintiff had planted and cultivated oysters was included in the Housman franchise, and thereupon they entered upon such premises and took and carried away the oysters and converted them to their own use.

There was evidence tending to show that at the time Housman obtained his franchise the land was surveyed and buoys set upon each corner, which consisted of a stake tied by a rope to a stone, and that such buoys would last about a year. It was, however, found as a fact that when the plaintiff began to work the tract it was not marked by buoys, and it is not claimed that Housman or his assigns have cultivated any part thereof for oysters or gathered any therefrom until the taking in 1902 of those claimed by the plaintiff. The trial judge found that the oysters belonged to the plaintiff, and the judgment entered upon his decision has been affirmed in the Appellate Division.

I do not think that the rights secured by the plaintiff to plant and cultivate oysters upon the franchise of Post or Merrill adds to or affects his claim. His rights were those only given to every citizen to go out into the sea and fish or plant and gather oysters. Those rights have been defined by ANDREWS, J., in the case of *Post* v. *Kreischer* (103 N. Y. 110) as follows: "By the common law oysters planted in a bed clearly marked out and defined in the tidewater of a bay or arm of the sea, which is a common fishery to all the inhabitants of the state where the bay or arm of the sea is situated, where there are no oysters growing spontaneously at the time, are the property of the person who planted them, and the taking them by another person is a trespass for which an action lies. (*Fleet* v. *Hegeman*, 14 Wend. 42; *Decker* v. *Fisher*, 4 Barb. 592; *Lowndes* v. *Dickerson*, 34 id. 586, 589.) The planting of oysters in tidewaters and the right of property in the person planting them is not regarded as an exclusive appropriation of the right of fishery common to all the inhabitants of the state but as a legitimate exercise of the common right not inconsistent with its reasonable enjoyment by others."

It will be observed that the bed must be " clearly marked out," that is, buoyed or staked out, and this must be continued evidently for the purpose of notifying or warning others who are lawfully fishing or gathering oysters upon the sea, of the private ownership of the oysters in the bed so " marked out." It is, therefore, apparent that the oysters planted and culti-vated by the plaintiff upon the tract in question became his personal property unless he has been deprived of his right thereto by the statute alluded to and the grant of the franchise thereunder to Housman.　Under the statute the commission-ers of fisheries are required to make a survey of the lands under the waters of the state suitable for use for the planting and cultivation of shell-fish and to make a map thereof. They are also required to make a survey of all the beds of oysters of natural growth and to set them apart for preserva-tion, and they are directed not to include them in any of the franchises granted.　They are then empowered in the name and behalf of the People of the state " to grant, by written instruments under their hands and seals, perpetual franchises for the purposes of shell-fish cultivation in the lands applied for under the waters of the state, for the consideration of not less than one dollar per acre, if the lands are unoccupied or unused, and not less than twenty-five cents per acre if the lands are in present use and occupation, and the right to use and occupy said grounds for said purposes shall be and remain in the said grantee, his legal representatives or successors for-ever; provided only that the said grantee, his legal representa-tives or successors shall *actually use and occupy* the same for the purposes of shell-fish cultivation, and for no other purpose whatever."　The statute further provides that " The fran-chises thus granted shall be deemed to be personal property, and courts of law and of equity shall have power, authority and jurisdiction to determine and enforce the rights of per-sons, firms or corporations thereto as though such franchises were actually personal property owned and possessed by such persons, firms or corporations, and such franchises may be sold, transferred, assigned or conveyed the same as other per-

sonal property. Immediately after the receipt of the aforesaid instruments of conveyance, the grantee shall at once cause the grounds therein conveyed to be plainly marked out by stakes, buoys or monuments, which stakes, buoys or monuments shall be continued by said grantee, his legal representatives or successors."

The franchise granted to Nicholas P. Housman pursuant to the provisions of this statute recites the application made by him to the commissioners of fisheries for a franchise, in which he represented that he wished and intended to use the grounds for the planting and cultivating of shell-fish; that the grounds designated were not natural oyster beds, and after also reciting the compliance with the rules of the commissioners established with reference to the granting of franchises proceeds to grant to the applicant a perpetual franchise for the purposes of shell-fish cultivation in the lands applied for, specifically describing them by their lot numbers, and then concludes "to have and to hold the same unto the said Grantee and legal representatives and successors forever, provided always that said grants are not natural oyster beds; that this grant shall not interfere with any established right of oyster cultivation and that *said grantee shall at once cause the said grants to be plainly marked by stakes, buoys, ranges or monuments, which stakes, buoys, ranges or monuments shall be continued by the grantee and legal representatives, and provided further that the grantee and holder of said grants shall actually use and occupy the same for the purposes named, in good faith,* and for no other purpose and this grant is accepted by said grantee subject to all the provisions of the act aforesaid  \*  \*  \*  *and it is stipulated, conditioned and agreed that if the grantee herein shall cease to actually use and occupy the premises hereby granted for shell-fish cultivation or shall use them for any other purposes whatsoever*  \*  \*  \*  *then this grant shall be void and the lands herein described shall forthwith revert to the State of New York.*"

It is now claimed that the provisions of this statute requiring

that the grantee shall actually use and occupy the same for
shell-fish cultivation, and that he shall immediately after the
receipt of the franchises at once cause the grants to be plainly
marked out by stakes, buoys or monuments, which stakes,
buoys or monuments shall be continued, are conditions subse-
quent, invoking the doctrine that the law abhors a forfeiture,
and that such forfeiture could only be adjudged in an action
brought by the attorney-general; that the oysters are *feræ
naturæ*, and the rule of law pertaining to reducing possession
of such animals when found upon the lands of another
obtains, and, therefore, the defendants finding oysters upon
their premises had the right to reduce them to possession and
dispose of them.　It appears from the scientific authorities
upon the subject that oysters are propagated by the emission
from the female oyster of ova which flow in the water and
become fertilized by contact with the milt emitted by the
male oyster, and from these there are hatched small larvae
which swim about for a few days and then settle down to the
bottom of the sea and attach to some hard substance, where
they remain, and from which oysters grow.　I do not deem it
necessary to now determine whether they should be regarded
as wild or domestic animals, or organisms incapable of loco-
motion, for it is conceded that they grow in beds having a
fixed location, either natural or by planting and cultivation,
and either under the common law or the statute those pro-
duced through human agency are the personal property of
the planter when he has complied with the rules with refer-
ence to marking their location.　As to whether the provisions
of the statute with reference to proceeding to cultivate and
mark out shall be regarded as conditions subsequent presents
a question of much importance.　The statute contains no pro-
vision for the recording of the transfers of the franchises.
Being personal property it may be transferred from one party
to another by mere assignment and it will readily be seen
that, after the lapse of years, the state or its officers would,
in many cases, be left without means of ascertaining the own-
ers of the franchises against whom a prosecution for forfeit-

ure could be maintained. If this construction of the statute is to be adopted then franchises may be procured of all of the available lands for oyster culture by persons not intending to engage in such business but for the purpose of holding up the culture until the necessities of the public for the food induce the payment to them of a large sum for the right to cultivate. This would not be in accord with public policy, and it should not be adopted unless such was the plain intent of the legislature.

The franchise granted to Housman herein was from the state, through its commissioners of fisheries. The grant, therefore, is not to be construed against the grantor, as in case of a conveyance by one citizen to another, but most favorably to the state, which stands in the place of the crown, where the rule is that only that passes in which the intention of the crown is clearly manifest. (*Duke of Somerset* v. *Fogwell*, 5 Barn. & Cres. 875, 885 ; *Matter of Mayor, etc., of New York*, 182 N. Y. 361, 365.) What was the legislative intent ? Evidently not to do away with or abrogate the common-law right of fishery in the bays or arms of the seas recognized the world over. The planting and cultivation of oysters had become a great and profitable industry, in which many people were engaged. When a suitable piece of ground was discovered for their propagation it often occurred that many persons sought to occupy it. Under the common law each person had the right to stake out his bed and the oysters growing thereon became his property, but heavy storms often carried away the stakes, and this was liable to occur several times a year. The replacing of them so as to correctly mark the bed became a fruitful source of dispute between the owners of abutting beds, often resulting in quarrels and the breach of the peace. It was to end these disputes that the legislature saw fit to pass the statute in question, not in derogation of the common law or the rights of its citizens but in aid thereof, by requiring a survey of lands designed for oyster culture and the granting of a franchise to those desiring to cultivate thereon, to the end that each person cultivating

a bed may have it definitely located by an official survey, so that in case his stakes or buoys should be swept away they could be accurately replaced in accordance with the survey, thus avoiding the disputes that theretofore often occurred. At common law, as we have seen, a person desiring to cultivate oysters was required (1) to stake or mark out the lot that he proposed to occupy for that purpose and to continue to keep it so marked, and (2) he must actually plant or cultivate oysters thereon, and as long as he continued to do this his right to the oysters was protected; but failing to keep his territory marked so that others may know the location of his property or in failing to cultivate or work his bed his exclusive right thereto was no longer enforceable at law and the rights of the public to fish or gather oysters thereon was no longer prevented by the courts. So it is under the statute and the franchise granted thereunder. In order to maintain his franchise he must first cause the same to be plainly marked by stakes, buoys or monuments, which marks shall be continued; and, second, he shall actually use and occupy the same for the cultivation of oysters in good faith. And under his grant he expressly stipulates and agrees that in case he fails to do this his grant "shall be void and the lands herein described shall forthwith revert to the State." So that under the common law the exclusive right of a citizen to a bed of oysters cultivated by him continues so long as he complies with the requirements to which we have called attention and no longer, and this is equally true with reference to the provisions of the statute. The rights of a person procuring a franchise continue so long as he complies with the provisions of the statute and the grant made to him thereunder in the particulars referred to, and no longer.

The grant, as we have seen, is of a right to cultivate shellfish at a place specified in the bays and arms of the seas. It prohibits the occupying of the territory for any other purpose. It does not purport to convey any interest in the land itself. It is only a right to occupy for a specified purpose. It is in the nature of an incorporeal hereditament, as was said by

GRAY, J., in *Moore* v. *Brown* (139 N. Y. 127, 132): " I see no other conclusion possible than that what he obtains from the state is the grant of the mere right or *incorporeal privilege* to take out the mineral found within the lands of the state, and to have as his own only what is so taken out. The act secures to him a right in that respect exclusive as to all the world and of a *duration measured by* \* \* \* *his compliance with conditions expressed* \* \* \*." (Washburn on Easements [2d ed.], 495.) In some respects it is analogous to the ordinary oil lease, so called, granted by the owners of lands to persons prospecting for oil. These leases usually grant a right to a person to enter upon the premises and bore for oil, but contain a provision that they shall be null and void at the end of a specified time from date, unless the lessees commence and with due diligence bore a well for oil within that time. It has been uniformly held that the failure of the lessee to enter and diligently prosecute the boring of a well within the time specified operated as a forfeiture. (*Allegany Oil Co.* v. *Bradford Oil Co.*, 21 Hun, 26; affirmed, 86 N. Y. 638; *Shepherd* v. *McCalmont Oil Co.*, 38 Hun, 37; *Eaton* v. *Allegany Gas Co.*, 122 N. Y. 416.)

In this case it appears that the plaintiff, after dredging off the lot in question, covered the same with oyster shells. It appears that oysters are propagated in various ways; one by the planting of seed oysters, so called, which consist of full-grown male and female oysters; and another way is by the planting of oyster shells, which has been found to be quite effective in case they are located within the vicinity of a bed of oysters. The larva or spat, as it is called, floats in the water and attaches to the shell and grows, becoming an oyster. Each of these ways of propagating is recognized, and the oysters growing upon the shells so planted are held to be the personal property of the planter the same as if they had grown from the seed oysters planted. (*Grace* v. *Willets*, 50 N. J. Law, 414.)

We, therefore, conclude that the requirements of the statute with reference to the marking out and occupying the territory

12

for the cultivation of shell-fish, which were incorporated into the grant to Housman, were conditions which he was required to perform in the ordinary way in which the cultivation of oysters is usually conducted, in order to exclude the public from their common-law right of fishing and gathering oysters upon the bays or arms of the seas which may be covered by his franchise, and he having failed to so perform for a number of years, and the plaintiff, having in good faith located upon the territory and planted a bed of oysters thereon and protected them by the marks recognized by the common law, has acquired a title to such oysters and no person has the right to take them from him.

The judgment should be affirmed, with costs.

VANN, J. (dissenting). Every condition in a grant is either precedent or subsequent, whether it relates to real or personal property. The condition relating to setting out buoys in the grant before us was a condition precedent, upon the performance of which the estate vested, but the condition relating to the maintenance of buoys thereafter was a condition subsequent, because it related to an estate or interest which had already vested. The claim that the condition as to maintenance was continuous is simply an admission that it was a condition subsequent, for whatever is continuous is present and cannot be past or precedent. A condition subsequent does not execute itself. Action was required by the state, as the grantor, by physical re-entry or judicial proceedings. Until then the grantee, by the necessary operation of the grant, was in lawful possession of the plat of land under water for the purpose of raising oysters. No one but himself had the right to use it for that purpose until the state interfered and dispossessed him for breach of the condition subsequent. The plaintiff, therefore, was a trespasser both in entering and cultivating, and the defendant had the right to harvest, although he did not plant, because the land was his for the purpose of the grant as against all but the state. While the equities are with the plaintiff, the law is with the defendant,

and I vote to maintain the law by reversing the judgment appealed from.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT and CHASE, JJ., concur with HAIGHT, J.; VANN, J., reads dissenting opinion; WILLARD BARTLETT, J., not sitting.

Judgment affirmed.